## FEES COLLECTED BY MUNICIPAL OFFICERS IN STATE CASES.

[Circuit Court of Scioto County.]

THE CITY OF PORTSMOUTH v. CREAD MILSTEAD; AND THE CITY OF PORTSMOUTH v. JAMES A. BAUCUS.

Decided, May, 1906.

*Mayors and Chiefs of Police—Fees Earned by, in State Cases—Not Recoverable by the Municipality—Uncertainty as to Authority to Delegate Control Over—Strict Limitation of Municipal Powers.*

1. The provisions of Section 1536-633 (known as Section 126 of the Municipal Code) requiring "that all fees pertaining to any office shall be paid into the city treasury" has reference to municipal fees solely, or such fees as may be fixed by municipal authority.
2. Said section does not authorize cities to interfere with the fees of mayors or chiefs of police in state criminal cases; whether such authority can be delegated to municipalities, *Quaere?*

JONES, J.; WALTERS, J., and CHERRINGTON, J., concur.

Error to Scioto County Common Pleas Court.

In the common pleas court, the city of Portsmouth, whose corporate limits are co-extensive with Wayne township, brought an action against its former mayor, Cread Milstead, seeking to recover certain fees in criminal prosecutions known as state cases.

The amended petition contains three causes of action; the first seeking to recover fees drawn by the mayor from the county treasurer, the second for sums drawn and collected from the common pleas court in felony cases, and the third for fees collected by him from defendants in cases of misdemeanor.

The amended petition alleges, as a basis of recovery, the passage of an ordinance whereby the city had fixed his salary as mayor in the sum of $1,500 per annum, and provided in such ordinance that such salary should be "in full yearly payment for all the services rendered and duties performed by him in his official capacity as such mayor of the city, judge of the police court and ex-officio justice of the peace, and all fees received and collected by him as such official shall be paid into the city treasury weekly."

In the second case, the action was brought against Baucus for fees of similar character, drawn by him as chief of police, and is otherwise similar to the former action, except that the ordinance in the latter case provides a salary of $1,200 per annum in full yearly payment for services performed by him in his "official capacity as such chief and ex-officio constable, and all the fees heretofore pertaining to said office, *i. e.*, that of city marshal, shall be paid weekly into the city treasury."

The common pleas court sustained a demurrer to the amended petition in each case.

Counsel for the mayor denies the power of the General Assembly to delegate to city councils the authority to legislate upon subjects that are non-municipal; it is insisted that municipal corporations may pass ordinances touching subjects only that are clearly of local and municipal character, but that fees in state cases not being of such character, the power of legislation and control thereof is reserved in the state.

The fees sought to be recovered by the city in the first and second causes of action were those levied by general taxation and paid out of the county and state treasuries respectively, and it would seem that this was an indirect method of recouping the city, from those treasuries, for the payment of salaries to its municipal officers.

This, together with the fact that fees and costs made in the performance of duties under state control and which are no part of the functions of city government might well raise the *quaere* whether such authority and control over fees in state criminal cases can be delegated to municipal councils. But whether it can be so delegated, it is not necessary for us to decide.

Assuming that such power of delegation does exist, then the question arises whether it has been conferred?

It is uniformly held that municipal powers are strictly limited. They have only these powers that are expressly granted or are clearly implied, as essential to carry into effect such powers expressly granted, and in cases of doubt, the doubt should be resolved against the city. *Ravenna* v. *Penn. Co.*, 45 O. S., 118, 121; *Bloom* v. *City of Xenia*, 32 O. S., 465.

It would seem that the framers of the ordinance in question doubted the purport of the act granting them authority to retain the fees of officers in state cases, for the terms of the ordinance manifestly widens the scope of the act.

Section 126 of the Muncipal Code provides that—

"Council shall fix the salaries of all officers, clerks, employes of the city government, except as otherwise provided in this act, and, except 'as otherwise provided in this act, *all fees pertaining to any office* shall be paid into the city treasury."

When the Legislature provided that all fees "pertaining to any office" shall be paid into the city treasury, did it intend more than the fees pertaining to the office of the mayor, and such as arose from duties purely municipal?

The city council, by the terms of its ordinance, resolved any doubt in its favor by broadening the scope of the. act, and providing that his salary should be in full for all of the services and duties performed by him in his official capacity as mayor of the city, judge of the police court, and *ex-officio justice of the peace,* etc.

The general scope of the act of October 22, 1902, now commonly known as the Municipal Code, was for the sole purpose of providing for the organization of municipal corporations and conferring upon such clearly defined municipal powers and duties.

By Section 129 of the code the mayor has been constituted the chief conservator of the peace within the corporation; this section clothes him with municipal duties only; and it is fairly inferable that the Legislature, in revising the statutes giving him compensation, intended such compensation for municipal duties solely.

The state fixes and controls the amount and character of fees in state cases, and has delegated to municipal councils authority to fix the fees for violation of its municipal laws. The scheme of legislation recognizes the distinction between the jurisdiction, powers and duties of the mayor, and such as he exercises as an *ex-officio* justice of the peace.

In addition to the municipal duties imposed upon the mayor by Section 129 of the Municipal Code, he is clothed by certain statutes, which were not incorporated in the act of October 22, 1902, with jurisdiction in felonies and other criminal proceedings, concurrent with justices of the peace throughout the county; and in certain classes of misdemeanors his jurisdiction is final and co-extensive with the county.

Under Revised Statutes, 1745, he "is entitled to receive the same fees that are or may be allowed justices of the peace for similar services."

This section has not been repealed by the Municipal Code, unless the blanket repealing clause effects its repeal by providing that "this act shall supersede all acts or parts of acts not herein expressly repealed which are inconsistent herewith." But Section 126 of the code is not necessarily inconsistent with Revised Statutes, 1745; or if doubt arises in the construction of these two sections, such doubt must be resolved against the delegation of power to the city.

It would seem, therefore, that Sections 126, 128 and 129 of the Municipal Code sought to deal only with municipal organizations, municipal duties and municipal fees; and that "all fees pertaining to any office," under the rule established in *Ravenna* v. *Penn. Co., supra,* refers to municipal fees or such that may be fixed and controlled by municipal authority.

What has been said above applies to the case of the city against James A. Baucus, as chief of police, except that the chief of police is more strongly entrenched behind an ordinance which only required the fees "pertaining to said office, *i. e., that of city marshal,* to be paid into the city treasury.

The court below properly sustained the demurrers to the several amended petitions, and in each case the judgment will be affirmed.

*George M. Osborn,* for plaintiffs in error.

*Henry Bannon,* for defendants in error.